**EXHIBIT**

**A**

After Recording Return To:
**ABN AMRO Mortgage Group, Inc.**
Mortgage Document Center
1201 E. Lincoln
Madison Heights, MI 48071

This instrument was prepared by:
**ABN AMRO Mortgage Group, Inc.**

**LAURIE MCPHILLIPS 11P  R 2006018368**
**Will County Recorder    Page 1 of 11**

**DET Date 01/27/2006    Time 11:47:13**
**Recording Fees:                       25.00**
**IL Rental Hsng Support Prog:   10.00**

———————————————— [Space Above This Line For Recording Data] ————————————————

## MORTGAGE   Redacted

THIS MORTGAGE is made this        17TH     day of   OCTOBER     2005        , between the Mortgagor,
KYLE J GORMAN AND CHRISTINE T GORMAN, HUSBAND AND WIFE

RESIDENCE IS    27786 OSMUN
IN THE    CITY    OF    MADSION HEIGHTS    MI    48071

herein "Borrower"), and the Mortgagee, **ABN AMRO Mortgage Group, Inc., a Delaware Corporation**, a corporation organized
and existing under the laws of the State of Delaware, whose address is 2600 West Big Beaver Road, Troy, Michigan 48084, (herein
"Lender").

Loan ID:   Redacted                                      Initials:

**ILLINOIS – SECOND MORTGAGE**                   (page 1 of 8)                                     0207b   (10/07/05)

WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $  ----52,000.00  , which indebtedness is evidenced by Borrower's note dated       OCTOBER 17, 2005       and extensions and renewals thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of indebtedness, if not sooner paid, due and payable on     NOVEMBER  1, 2035       . The interest rate is    6.750 % per annum.

TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with interest thereon; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, warrant, grant and convey to Lender the following described property located in the County of       WILL       State of Illinois:

LOT 284 IN LAKEWOOD VALLEY UNIT 4, BEING A SUBDIVISION OF PART OF THE EAST 1/2 OF SECTION 7, TOWNSHIP 37 NORTH, RANGE 9 EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 1, 1999 AS DOCUMENT NUMBER R99-82664, ALL IN WILL COUNTY, ILLINOIS.

Parcel ID Redacted
which has the address of                                                    2640 CARLSBAD        [Street]

                      AURORA          [City], Illinois   60504    [ZIP code]  ("Property Address");

Loan ID: ____ Redacted                               Initials:
ILLINOIS – SECO                          (page 2 of 8)                              PC 207b  (10/07/05)

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, warrant, grant and convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1.** **Payment of Principal and Interest.** Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

**2.** **Funds for Taxes and Insurance.** Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3.** **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under Paragraphs 1 and 2 shall be applied: first, to interest due; second, to principal due; third, to amounts payable under Paragraph 2; and last, to late charges due under the Note.

**4.** **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5.** **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards, including, but not limited to, earthquakes and floods, as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. Lender may require Borrower to pay, in connection with this Loan, either:

Loan ID: **Redacted**                                    Initials:

ILLINOIS - SE{ }                              *(page 3 of 8)*                                    PC207b   (10/07/05)

3

(a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Any amounts disbursed by Lender under this Section shall become additional debt of Borrower secured by this Mortgage. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or applicable law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Mortgage, whether or not then due, with the excess, if any, paid to Borrower.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under the default provisions of this Mortgage or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Mortgage, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Mortgage, whether or not then due.

    **6.**     **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

    **7.**     **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Loan ID: ___ **Redacted** ___
*(page 4 of 8)*                                     Initials:

PC207b   (10/07/05)

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

      **8.**      **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

      **9.**      **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

      **10.**      **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

      **11.**      **Successors and Assigns Bound; Joint and Several Liability; Co-signers.** Subject to the provisions of Section 16, any successor in interest of Borrower who assumes Borrower's obligations under this Mortgage in writing, and is approved by Lender, shall obtain all of Borrower's right and benefits under this Mortgage. Borrower shall not be released from Borrower's obligations and liability under this Mortgage unless Lender agrees to such release in writing. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, warrant, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

      **12.**      **Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by first class mail or certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by first class mail or certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

      **13.**      **Governing Law; Severability.** This Mortgage shall be governed by federal law and the law of the jurisdiction in which the property is located. All rights and obligations contained in this Mortgage are subject to any requirements and limitations of applicable law. Applicable law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

      **14.**      **Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

      **15.**      **Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16.     **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17.     **Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 30 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees and costs of documentary evidence, abstracts and title reports.**

18.     **Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19.     **Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under  paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

20.     **Release.** Upon payment of all sums secured by this Mortgage, Lender shall release this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21.     **Waiver of Homestead.** In accordance with State of Illinois law, Borrower hereby releases and waives all rights under and by virtue of the homestead exemption laws of the State of Illinois.

22.     **Hazardous Substances.** As used in this Section, "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. "Environmental Law" means federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law or which, due to the presence, use or release of a Hazardous

Loan ID: __**Redacted**__                                             Initials: _____

ILLINOIS – SECOND MORTGAGE                          (page 6 of 8)                                          PC207b   (10/07/05)



Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property. Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns or is notified by any government or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

 **23.** **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the loan.

Loan ID: **Redacted**

ILLINOIS – SECOND MORTGAGE    *(page 7 of 8)*

Initials: _____

PC207b (10/07/05)

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

_____ (Seal)      _____ (Seal)
KYLE J GORMAN                -Borrower     CHRISTINE T GORMAN          -Borrower

_____ (Seal)      _____ (Seal)
                             -Borrower                                -Borrower

*[Sign Original Only]*

STATE OF ILLINOIS,   *Winnebago*                    County ss:

I,   *Angela  Horstmeier*
a Notary Public in and for said county and state do hereby certify that
          KYLE J GORMAN AND CHRISTINE T GORMAN, HUSBAND AND WIFE

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.

Given under my hand and official seal, this 17TH                 day of OCTOBER     2005

My Commission Expires:
                                              _____
                                              Notary Public  COUNTY,  ILLINOIS

"OFFICIAL SEAL"
ANGELA HORSTMEIER
Notary Public, State of Illinois
My Commission Expires 9/02/2008

Loan ID: __ **Redacted**                                Initials: _____
ILLINOIS - SECOND MORTGAGE              *(page 8 of 8)*            C207b   (10/07/05)

**ADJUSTABLE RATE RIDER**
(1-Year LIBOR Index – Rate Caps)
(Assumable during Life of Loan)

THIS ADJUSTABLE RATE RIDER is made this       17TH       day of   OCTOBER      ,2005
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed
(the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's
Adjustable Rate Note (the "Note") to ABN AMRO Mortgage Group, Inc. (the "Lender") of the same date and covering
the property described in the Security Instrument and located at:

        2640 CARLSBAD                AURORA                      IL 60504
                                [Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE
INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE
AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME
AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL CONVENANTS.** In addition to the covenants and agreements made in the
Security Instrument, Borrower and Lender further covenant and agree as follows:
A.      **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
        The Note provides for an initial interest rate of   6.750        %. The Note
        provides for changes in the interest rate and monthly payments as follows:
        4.      **INTEREST RATE AND MONTHLY PAYMENT CHANGES**
                (A)     **Change Dates**
                The interest rate I will pay may change on the first day of
                NOVEMBER         , 2008, and may change on that day every 12th month
                thereafter. Each date on which my interest rate could change is called a "Change Date."

Loan Number   [Redacted]          Borrower's Initials

**MULTISTATE ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable during Life of Loan)—Single Family—Freddie Mac
UNIFORM INSTURMENT  (1/1, 3/1) MI, OH**                                                    **Form 5130   3/04**
                                *(page 1 of 3 pages)*                                       PC232 (10/06/05 v.2)

9

#### (B)    The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

#### (C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding    THREE                 percentage point(s) ( 3.000 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

#### (D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than    8.750    % or less than    4.750    %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than         TWO         percentage point(s) ( 2.0         %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 12.750    %.

#### (E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

#### (F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.    TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Section 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Loan Number ___ Redacted ___    Borrower's Initials

MULTISTATE ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable during Life of Loan)--Single Family--Freddie Mac
UNIFORM INSTURMENT  (1/1, 3/1) MI, OH                                                                              Form 5130    3/04
*(page 2 of 3 pages)*                                          PC232 (10/06/05 v.2)

/0

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)          X _____ (Seal)
KYLE J GORMAN            - Borrower          CHRISTINE T GORMAN            - Borrower

_____ (Seal)          _____ (Seal)
                         - Borrower                                       - Borrower

Loan Number  ___ Redacted ___

**MULTISTATE ADJUSTABLE RATE RIDER-1-Year LIBOR Index (Assumable during Life of Loan)—Single Family—Freddie Mac
UNIFORM INSTURMENT  (1/1, 3/1) MI, OH**                                    Form 5130    3/04
                                    (page 3 of 3 pages)                    PC232 (10/06/05 v 2)

**LAURIE MCPHILLIPS  3P  R 2007140289**
Will County Recorder          Page 1 of 3

**PREPARED BY: Stewart Lender Services**
**RECORDING REQUESTED BY**
**/AFTER RECORDING RETURN TO:**

Stewart Lender Services
Attn. Maude LeBlanc
P.O. Box 36369
Houston, Texas  77236
Tel. (800) 795-5263

RAD Date 09/20/2007    Time 09:00:07
Recording Fees:                     24.75
IL Rental Hsng Support Prog:   10.00

Redacted          Redacted                              Project Number:

(Space Above this Line For Recorder's Use Only)

# ASSIGNMENT of MORTGAGE

**STATE OF ILLINOIS**                                      KNOW ALL MEN BY THESE PRESENTS:

**COUNTY OF WILL**

That ABN AMRO MORTGAGE GROUP, INC. ('Assignor'), acting herein by and through a duly authorized officer, the owner and holder of one certain promissory note executed by KYLE J. GORMAN AND CHRISTINE T. GORMAN ('Borrower(s)') secured by a Mortgage of even date therewith executed by Borrower(s) for the benefit of the holder of the said note, which was recorded on the lot(s), or parcel(s) of land described therein situated in the County of Will,  State of Illinois:

**Recording Ref:**   Instrument/Document No. R 2006018368
**Property Address:**   2640 CARLSBAD
                              AURORA IL 60504

For and in consideration of the sum of Ten and No/100 dollars ($10.00), and other good valuable and sufficient consideration paid, the receipt of which is hereby acknowledged, does hereby transfer and assign, set over and deliver unto LASALLE BANK MIDWEST, NA (Assignee) all beneficial interest in and to title to said Mortgage, together with the note and all other liens against said property securing the payment thereof, and all title held by the undersigned in and to said land.

SEE EXHIBIT 'A'
PIN# RedactedRedacted
TO HAVE AND TO HOLD unto said Assignee said above described Mortgage and note, together with all and singular the liens, rights, equities, title and estate in said real estate therein described securing the payment thereof, or otherwise.

Executed this the 15th day of August A.D. 2007.          ABN AMRO MORTGAGE GROUP, INC.

Attest: _____          By: _____
    LEAH BOEDEKER                                JAMES KUCHERKA
    ASSISTANT VICE PRESIDENT            VICE PRESIDENT



THE STATE OF TEXAS

COUNTY OF HARRIS

On this the 15th day of August A.D. 2007, before me, a Notary Public, appeared JAMES KUCHERKA to me personally known, who being by me duly sworn, did say that (s)he is the VICE PRESIDENT of ABN AMRO MORTGAGE GROUP, INC., and that said instrument was signed on behalf of said corporation by authority of its Board of Directors, and said JAMES KUCHERKA acknowledged said instrument to be the free act and deed of said corporation.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my official seal the day and year first above written.



Assignee's Address:          Assignor's Address:
135 S. LaSalle Street        2600 WEST BIG BEAVER ROAD
Chicago, Illinois 60603      TROY, MI 48007-3703

GAYLE CRAINE
NOTARY PUBLIC
STATE OF TEXAS
COMM. EXPIRES 08-31-2010

Redacted

# EXHIBIT 'A'

*JOB #:* Redacted

LOT 284 IN LAKEWOOD VALLEY UNIT 4, BEING A SUBDIVISION OF PART OF THE
EAST 1/2 OF SECTION 7, TOWNSHIP 37 NORTH, RANGE 9 EAST OF THE THIRD
PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 1,
1999 AS DOCUMENT NUMBER R99-82664, ALL IN WILL COUNTY, ILLINOIS.

1

**R2020010665**

KAREN A. STUKEL
WILL COUNTY RECORDER
RECORDED ON
02/06/2020 12:10:30 PM
REC FEE: 42.00
IL RENTAL HSNG: 9.00
PAGES: 3
BBLEH

Prepared By and Return To:
**Murat Deniz**
Collateral Department
Meridian Asset Services, LLC
3201 34th Street South, Suite 310
St. Petersburg, FL 33711
(727) 497-4650

 ___ Space above for Recorder's use ___ 

## ASSIGNMENT OF MORTGAGE

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO LASALLE BANK MIDWEST N.A.**, whose address is **1800 TAPO CANYON RD., SIMI VALLEY, CA 93063**, (ASSIGNOR), does hereby grant, assign and transfer to **MEB LOAN TRUST IV**, whose address is **C/O U.S. BANK TRUST NATIONAL ASSOCIATION, 300 DELAWARE AVENUE, 9TH FLOOR, WILMINGTON, DELAWARE 19801**, (ASSIGNEE), its successors, transferees and assigns forever, all beneficial interest under that certain mortgage, together with the certain note(s) described therein with all interest, all liens, and any rights due or to become due thereon.

Date of Mortgage: 10/17/2005
Original Loan Amount: $52,000.00
Executed by (Borrower(s)): **KYLE J GORMAN & CHRISTINE T GORMAN**
Original Lender: **ABN AMRO MORTGAGE GROUP, INC., A DELAWARE CORPORATION**
Filed of Record: In Book/Liber/Volume N/A, Page N/A
Document/Instrument No: R 2006018368 in the Recording District of **WILL, IL**, Recorded on 1/27/2006.

Legal Description: SEE EXHIBIT "A" ATTACHED
Property more commonly described as: **2640 CARLSBAD, AURORA, ILLINOIS 60504**

IN WITNESS WHEREOF, the undersigned by its duly elected officers and pursuant to proper authority of its board of directors has duly executed, sealed, acknowledged and delivered this assignment.

Date: 1/28/2020

BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO LASALLE BANK MIDWEST N.A., BY
MERIDIAN ASSET SERVICES, LLC, ITS ATTORNEY-IN-FACT

By: **MARK WATERMAN**                                      Witness Name: **DIEP DOAN**
Title: **VICE PRESIDENT**

A NOTARY PUBLIC OR OTHER OFFICER COMPLETING THIS CERTIFICATE VERIFIES ONLY THE IDENTITY OF THE INDIVIDUAL WHO SIGNED THE DOCUMENT TO WHICH THIS CERTIFICATE IS ATTACHED, AND NOT THE TRUTHFULNESS, ACCURACY, OR VALIDITY OF THAT DOCUMENT

State of      **FLORIDA**
County of      **PINELLAS**

On 1/28/2020, before me, **CHRISTOPHER STAFFORD**, a Notary Public, personally appeared **MARK WATERMAN, VICE PRESIDENT of/for MERIDIAN ASSET SERVICES, LLC, AS ATTORNEY-IN-FACT FOR BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO LASALLE BANK MIDWEST N.A.,** personally known to me, or who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of FLORIDA that the foregoing paragraph is true and correct. I further certify MARK WATERMAN, signed, sealed, attested and delivered this document as a voluntary act in my presence.

Witness my hand and official seal.



CHRISTOPHER STAFFORD
Commission # GG 177634
Expires January 22, 2022
Bonded Thru Budget Notary Services

(Notary Name): **CHRISTOPHER STAFFORD**
My commission expires: **01/22/2022**

Redacted

## EXHIBIT "A"

LOT 284 IN LAKEWOOD VALLEY UNIT 4, BEING A SUBDIVISION OF PART OF THE
EAST 1/2 OF SECTION 7, TOWNSHIP 37 NORTH, RANGE 9 EAST OF THE THIRD
PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 1,
1999 AS DOCUMENT NUMBER R99-82664, ALL IN WILL COUNTY, ILLINOIS.





ORIGINAL

ADJUSTABLE RATE NOTE
(1-Year LIBOR Index – Rate Caps)
(Assumable during Life of Loan)

**EXHIBIT B**

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

| OCTOBER 17, 2005 | ROCHESTER HILLS | MI |
|---|---|---|
| [Date] | [City] | [State] |

| 2640 CARLSBAD | AURORA | IL 60504 |
|---|---|---|
| | [Property Address] | |

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 52,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is ABN AMRO Mortgage Group, Inc. I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 6.750 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the first day of each month beginning on DECEMBER 01 ,2005 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 1, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **ABN AMRO Mortgage Group, Inc., 2600 West Big Beaver Road, Troy, Michigan, 48084** or at a different place if required by the Note Holder.

#### (B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 337.27 . This amount may change.

#### (C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

#### (A) Change Dates

The interest rate I will pay may change on the first day of NOVEMBER , 2008 , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

Loan Number Redacted                    Borrower's Initials: _____

MULTISTATE ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable during Life of Loan)—Single Family—Freddie Mac
UNIFORM INSTRUMENT 1/1, 3/1 MI, OH
Form 5530 3/04
(page 1 of 4 pages)
PC229 (10/06/05 v.2)



### (B)    The Index

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the one-year London Interbank Offered Rate ("LIBOR") which is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market, as published in *The Wall Street Journal.* The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C)    Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding THREE          percentage point(s)
(          3.000          %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D)    Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than          8.750          % or less than
          4.750          %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than
TWO          percentage point(s)(          2.0          %) from the rate of interest I have been paying for
the preceding 12 months. My interest rate will never be greater than   12.750          %.

### (E)    Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F)    Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes. My partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6.    LOAN CHANGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)    Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is

Loan Number:          **Redacted**          Borrower's Initials:

MULTISTATE ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable during Life of Loan)—Single Family—Freddie Mac
UNIFORM INSTRUMENT  1/1, 3/1 MI, OH                                                Form 5530 3/04
                                        *(page 2 of 4 pages)*                      PC229 (10/06/05 v.2)

due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

    **(B)**    **Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

    **(C)**    **Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

    **(D)**    **No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

    **(E)**    **Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**8.**    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.**    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who take over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**10.**    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11.**    **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

    **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 17, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

    If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However,

Loan Number: **Redacted**        Borrower's Initials:

MULTISTATE ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable during Life of Loan)—Single Family—Freddie Mac
UNIFORM INSTRUMENT 1/1, 3/1 M1, OH        Form 5530 3/04
(page 3 of 4 pages)        PC229 (10/06/05 v.2)

this option shall not be exercised by lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 14 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

12. **GOVERNING LAW**

This agreement, including the provisions relating to interest and fees that are considered to be interest under federal law, will be governed and interpreted in accordance with federal law and, to the extent not preempted by federal law, the laws of the State of Michigan without regard to its conflict of laws provisions.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED

_____ (Seal)
KYLE J GORMAN          - Borrower

PAY TO THE ORDER OF
LaSalle Bank, N.A.

_____ (Seal)
CHRISTINE T GORMAN      - Borrower

WITHOUT RECOURSE
ABN AMRO MORTGAGE GROUP, INC.

_____ (Seal)
                      - Borrower

MARGARET A. BEZY
FIRST VICE PRESIDENT

_____ (Seal)
                      - Borrower

*[Sign Original Only]*

Loan Number: **Redacted**

MULTISTATE ADJUSTABLE RATE NOTE-1-Year LIBOR Index (Assumable during Life of Loan)—Single Family—Freddie Mac
UNIFORM INSTRUMENT  1/1, 3/1 MI, OH                                    Form 5530 3/04

*(page 4 of 4 pages)*                                          PC229 (10/06/05 v.2)

Pay to the order of

_____
Without recourse
Bank of America, National Association
Successor by merger to LaSalle Bank, N.A.

Gerald T. Sajdak
Senior Vice President

EXHIBIT
C

Investor Loan: Redacted

**After Recording Return To:**
Bank of America, N.A.
11802 Ridge Parkway, Ste 100 HRM
Home Retention
Broomfield, CO 80021

This document was prepared by Bank of America, N.A.

_____**[Space Above This Line For Recording Data]**_____

## HOME AFFORDABLE SECOND LIEN MODIFICATION AGREEMENT

Borrower ("I")[1] Kyle J Gorman and Christine T Gorman
Second Lien Servicer, acting as authorized agent of the Note Holder ("Lender") Bank of America, N.A.
Date of Second Lien Security Instrument ("Mortgage") and Note or Loan Agreement (the "Note"): October 17, 2005
Second Lien Loan Number: Redacted
Property Address ("Property"): 2640 Carlsbad, Aurora, IL 60504

If my representations in Section 1 below continue to be true and correct as of the date when all other conditions for this Home Affordable Second Lien Modification Agreement ("2MP Modification Agreement") to become effective have been satisfied, then this 2MP Agreement will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents" and the loan or line of credit evidenced by the Loan Documents is referred to as the "Loan." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that I must sign and return one copy of this 2MP Agreement to the Lender on or before July 26, 2015. This Agreement will not take effect unless the conditions set

_____

[1] If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I." For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Page 1 of 12



forth in Section 2 have been satisfied.

1. **My Representations.** I represent and warrant to Lender as follows:

   A. **I AFFIRM THAT I HAVE ENTERED INTO A ("GSE STANDARD MODIFICATION") ON MY FIRST LIEN MORTGAGE LOAN (THE "FIRST MORTGAGE") SECURED BY THE PROPERTY UNDER THE HOME AFFORDABLE MODIFICATION PROGRAM ("HAMP") or GSE STANDARD MODIFICATION PROGRAM.**

   B. Under penalty of perjury, all documents and information I have provided to the Lenders in connection with my ("GSE Standard Modification") and this 2MP Modification Agreement, including any trial period plans, are true and correct;

   C. I have filed for bankruptcy protection and am currently in an active bankruptcy proceeding. I have obtained all necessary approvals for this 2MP Modification Agreement from the U.S. Bankruptcy Court in which my proceeding is pending.

2. **Conditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that my representations and warranties set forth in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In this event, the Lender will have all of its rights and remedies under the Loan Documents and applicable law, and any payments I make under this Agreement shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

   B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender and Lender receives from me a signed copy of this Agreement, which includes signatures for the ("Dodd-Frank/Rental Occupancy Certification") (ii) my First Mortgage has been permanently modified under ("GSE Standard Program") and the ("GSE Standard Modification") has become effective, and (iii) my First Mortgage as modified under ("GSE Standard Program") is in good standing as of the Modification Effective Date. "Good standing" means my First Mortgage has never been past due by three or more monthly payments at the end of any month. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

   C. I may not make any alterations or changes to any terms or provisions of this 2MP Modification Agreement without the written consent of the Lender.

Page 2 of 12

Redacted

3. **The Modification**. If my representations in Section 1 continue to be true and correct and all conditions to the modification set forth in Section 2 have been met, the Loan Documents will become modified as provided in this Agreement as of 08/01/2015 (the 'Modification Effective Date"). As of that date, all unpaid late charges, insufficient fund fees, and certain other home equity loan or line of credit-related fees will be waived, and my Mortgage will be current. The first modified monthly payment will be due on the Modification Effective Date, and subsequent modified payments will be due on the first day of each month.

   A. The modified principal balance of my Note (the "New Principal Balance"): (1) will include all amounts and arrearages that are accrued and unpaid (which may include accrued and unpaid interest, real estate taxes and insurance premiums) and out of pocket costs and expenses incurred in performing second lien servicing obligations; (2) will exclude any accrued and unpaid late charges, insufficient fund fees, and certain other home equity loan or line of credit-related fees that may have been incurred after the loan originated, which will be waived (collectively the "Unpaid Amounts"); (3) and will exclude any principal and interest amounts paid to the Lender but not previously credited to my Loan on the Modification Effective Date. The New Principal Balance of the Note will be $42,681.49. I understand that by agreeing to add the Unpaid Amounts to the unpaid principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under the Note as modified by this Agreement. I also understand that this means interest will now accrue on the unpaid interest that is now included in the New Principal Balance, if any, and that this would not happen without this Agreement.

   B. Interest at the rate of 1.000% will begin to accrue on the New Principal Balance as of 07/01/2015 and the first modified monthly payment will be due on the Modification Effective Date in the amount of $103.01. This 1.000% rate will remain in effect for five years from the Modification Effective Date. At the end of this five-year period, my interest rate will increase to the rate then in effect for my First Mortgage under my ("GSE Standard Modification"); thereafter the interest rate will increase in the same amount and on the same schedule as is provided for the interest on my First Mortgage under the terms of my ("GSE Standard Modification").

   The unpaid principal balance as of the Modification Effective Date will be amortized over the period from the Modification Effective Date to the New Maturity Date as defined below.

Redacted

On each date on which a new interest rate begins (the "Interest Rate Beginning Date"), as shown in the table below, Lender will determine the amount of the monthly payment that would be sufficient to repay the unpaid principal balance in full on the New Maturity Date, excluding any amounts that have been deferred or subject to forbearance, that I owe on the Interest Rate Beginning Date at the new interest rate. The result of this calculation will be the amount of the new scheduled payment. The exact monthly payment amount I must pay for each month will be shown on my monthly statement as Payment Due.

My final payment will be due and payable at the New Maturity Date of July 1, 2055 and will reflect any amounts subject to forbearance or deferral by Lender.

My interest rate schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Beginning Date | Monthly Principal and/or Interest Amount | Monthly Escrow Payment Amount | Total Monthly Payment | Payment begins on | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| 1-5 | 1.000% | July 1, 2015 | $103.01 | $0.00 | $103.01 | August 1, 2015 | 60 |
| 6-40 | 5.000% | July 1, 2020 | $184.17 | $0.00 | $184.17 | August 1, 2020 | 419 |
| Final Payment | | | | | *$2,128.75 | July 1, 2055 | 1 |

* This is the amount of the final payment on your loan, assuming all scheduled principal payments are made in accordance with this 2MP Modification Agreement. This payment includes the Deferred Principal Balance, any amounts amortized to an Amortization Date beyond the Maturity Date, any and all remaining deferred amounts, and all other amounts due and owing on the Maturity Date as set forth in this 2MP Modification Agreement.

C.   Because I received a forbearance of principal under my ("GSE Standard Modification"), $1,942.01 of the New Principal Balance on my Loan (the "Deferred Principal Balance") will be subject to forbearance under this 2MP Modification Agreement and deferred until the New Maturity Date. This Deferred Principal Balance is reflected in the final payment specified in B. above, and shall be due and payable on or before the earliest of my transfer of the Property, my payoff of the unpaid principal and interest balance of the Loan, or the New Maturity Date. If I make a partial prepayment of principal, the Lender will apply that partial prepayment to the portion of the principal not deferred under this Agreement, unless my prepayment is larger than the entire principal amount not deferred, in which case the partial prepayment will be applied first to the deferred portion of principal.

RedactedRedacted

I will not pay interest or make monthly payments on the Deferred Principal Balance.

D. Any amounts deferred under this Agreement are not forgiven, but payment of these amounts is only delayed. I must pay the deferred amounts, and all other amounts I owe, including any amounts subject to forbearance or any amounts amortized to an Amortization Date beyond the Maturity Date, when the Property is sold or transferred, when I pay the outstanding balance in full, or on the New Maturity Date. Otherwise, Borrower must pay the deferred amounts on the New Maturity Date. This may require Borrower to pay a potentially large amount, known as a balloon payment, on the Maturity Date.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER. THE AMOUNT OF THE FINAL PAYMENT ON THIS LOAN, ASSUMING ALL SCHEDULED PRINCIPAL PAYMENTS ARE MADE IN ACCORDANCE WITH THIS 2MP MODIFICATION AGREEMENT, IS $2,128.75.

E. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this 2MP Modification Agreement.

F. If the Loan Documents contain a provision for a default rate of interest, that provision is null and void. In the event of default under the Loan Documents, as modified by this 2MP Modification Agreement, the interest that will be due will be the applicable rate set forth in Section 3.B. of this 2MP Modification Agreement.

G. If my monthly payments are automatically being deducted from a deposit account under PayPlan, I agree that from and after the effective date of this Modification Agreement, my PayPlan payments will be deducted from my account on the first day of the month and in the amount of my new monthly payments under the terms of this Agreement, unless I contact Servicer (at 1.800.669.6650) Monday through Friday 8 a.m. to 5 p.m., local time and make other arrangements at least five days in advance of my PayPlan payment; provided, however, that if I made any payments for amounts included in the New Unpaid Principal Balance and such amounts were applied to the first payment due under this Modification Agreement on the Modification Effective

RedactedRedacted

Date, then my PayPlan payments will be deducted on the first day of the month beginning the month after the Modification Effective Date.

I agree that if I make any payments for amounts included in the New Unpaid Principal Balance under this Modification Agreement, Servicer may apply those payments to the first payment due under this Modification Agreement on the Modification Effective Date, for amounts received on or after the first day of the month before the Modification Effective Date; and otherwise Servicer may apply those payments to reduce the Unpaid Principal Balance of my Loan.

In addition, I agree that any remaining unapplied amounts may be applied to reduce the principal balance of my Loan. I understand that all payments due between the date Servicer sent this Modification Agreement to me and the Modification Effective Date are included in the New Unpaid Principal Balance.

4. **Consent to Release of Personal Information.** I agree and consent to the disclosure of my personal information, including the terms of this 2MP Modification Agreement or of any ("GSE Standard Modification") Trial Period Plan as follows:

   A. To the U.S. Treasury Department for purposes related to ("GSE Standard Modification") or the Home Affordable Second Lien Modification Program ("2MP Program");

   B. To any investor, insurer, or guarantor that owns, insures or guarantees my Loan;

   C. To the servicer of my first lien mortgage loan;

   D. To Fannie Mae and Freddie Mac as necessary for either to perform its respective obligations as financial agents of the U.S. Treasury Department in connection with ("GSE Standard Modification") and the 2MP Program; and

   E. To companies that perform support services for HAMP and the 2MP Program, including marketing these programs, conducting surveys or providing marketing research or other borrower outreach, data processing, and technical systems consulting.

5. **Additional Agreements.** I agree to and certify the following:

   A. All persons who signed the Loan Documents or their authorized representative(s) have signed this 2MP Modification Agreement, unless a borrower or co-borrower is deceased or the Lender has waived this requirement in writing.

   B. This 2MP Modification Agreement shall supersede the terms of any modification, forbearance, trial period plan or workout plan that I previously entered into with

Redacted

Lender as to my second lien mortgage Loan.

C.  Except to the extent that they are modified by this 2MP Modification
    Agreement, I will comply with and be bound by all covenants, agreements, and
    requirements of the Loan Documents.  These covenants, agreements and
    requirements include, but are not limited to, my agreement to make all
    payments of taxes, insurance premiums, assessments, and all other payments
    relating to the Property I am required to make under the Loan Documents, the
    amount of which payments may change periodically over the term of my Loan.

D.  The Loan Documents are composed of duly valid, binding agreements,
    enforceable in accordance with their terms and are hereby reaffirmed except
    as modified by this 2MP Modification Agreement.

E.  Notwithstanding any other provision of this 2MP Modification Agreement, any
    provision in any of the Loan Documents providing for a penalty for full or partial
    prepayment of the principal balance of the Loan shall be null and void.

F.  This 2MP Modification Agreement shall be null and void if Lender does not
    receive all necessary title endorsements, title insurance products, and/or
    subordination agreements. I also agree to allow Lender to attach an Exhibit A
    to this 2MP Modification Agreement which will include a Legal Description,
    recording information of the original security instrument, and any other relevant
    information required by a County Clerk's Office to allow for recording if and
    when recording becomes necessary for Lender.

G.  All terms and provisions of the Loan Documents, except as expressly modified
    by this 2MP Modification Agreement, remain in full force and effect; and
    nothing in this 2MP Modification Agreement shall be understood or construed
    to be a satisfaction or release in whole or in part of the obligations contained in
    the Loan Documents as modified by this 2MP Modification Agreement.

H.  Notwithstanding any other provision of the Loan Documents, if all or any part of
    the Property or any interest in it is sold or transferred without Lender's prior
    written consent, Lender may, at its option, require immediate payment in full of
    all sums secured by the Mortgage.  However, Lender shall not exercise this
    option if federal law prohibits the exercise of such option as of the date of such
    sale or transfer.  If Lender exercises this option, Lender shall give me notice of
    acceleration.  The notice shall provide a period of not less than 30 days from
    the date the notice is delivered or mailed within which I must pay all sums
    secured by the Mortgage.  If I fail to pay these sums prior to the expiration of
    this period, Lender may invoke any remedies permitted by the Mortgage
    without further notice or demand on me.

I.  A buyer or transferee of the Property will not be permitted, under any

Redacted

circumstance, to assume the Loan.  This 2MP Modification Agreement may not, under any circumstances, be assigned to, or assumed by, a third party.

J.   In consideration of this 2MP Modification Agreement, I agree to execute any document, including any corrected documents and replacements for lost documents, necessary to consummate the transactions contemplated in this 2MP Modification Agreement.   If any document related to the Note and Security Instrument and/or this 2MP Modification Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary.  If the original promissory note is replaced the Lender hereby indemnifies me against any loss associated with a demand on the original note.  All documents the Lender requests of me shall be referred to as "Documents."  I agree to deliver the Documents within ten (10) days after receipt by me of a written request for such replacement.

Redacted

**DODD-FRANK CERTIFICATION.** The following information is requested by the federal government in accordance with the Dodd-Frank Wall Street Reform and Consumer Protection Act (Pub. L. 111-203). **You are required to furnish this information.** The law provides that no person shall be eligible to begin receiving assistance from the Making Home Affordable Program, authorized under the Emergency Economic Stabilization Act of 2008 (12 U.S.C. 5201 et seq.), or any other mortgage assistance program authorized or funded by that Act, if such person, in connection with a mortgage or real estate transaction, has been convicted, within the last 10 years, of any one of the following: (A) felony larceny, theft, fraud, or forgery, (B) money laundering or (C) tax evasion.

I/we certify under penalty of perjury that I/we have not been convicted within the last 10 years of any one of the following in connection with a mortgage or real estate transaction:

(a) felony larceny, theft, fraud, or forgery,
(b) money laundering or
(c) tax evasion.

I/we understand that the servicer, the U.S. Department of the Treasury, or their agents may investigate the accuracy of my statements by performing routine background checks, including automated searchers of federal, state and county databases, to confirm that I/we have not been convicted of such crimes. I/we also understand that knowingly submitting false information may violate Federal law.

This Certificate is effective on the earlier of the date listed below or the date received by your servicer.

**OCCUPANCY CERTIFICATION.** I hereby certify under penalty of perjury that **either** (a) I occupy the property described above as a principal residence, **or** (b) the property is a rental property and each of the following statements is true and correct with respect to the property:

1.  I intend to rent the property to a tenant or tenants for at least five years following the effective date of my mortgage modification. I understand that the servicer, the US Department of the Treasury, or their respective agents may ask me to provide evidence of my intention to rent the property during such time. I further understand that such evidence must show that I used reasonable efforts to rent the property to a tenant or tenants on a year-round basis, if the property is or becomes vacant during such five-year period.

    Note: The term "reasonable efforts" includes, without limitation, advertising the property for rent in local newspapers, websites or other commonly used forms



of written or electronic media, and/or engaging a real estate or other professional to assist in renting the property, in either case, at or below market rent.

2. The property is not my secondary residence and I do not intend to use the property as a secondary residence for at least five years following the effective date of my mortgage modification. I understand that if I do use the property as a secondary residence during such five-year period, my use of the property may be considered to be inconsistent with the certifications I have made herein.

   Note: The term 'secondary residence' includes, without limitation, a second home, vacation home or other type of residence that I personally use or occupy on a part-time, seasonal or other basis.

**Notwithstanding the certifications made in paragraphs (1) and (2) above, I may at any time sell the property, occupy it as my principal residence, or permit my legal dependent, parent or grandparent to occupy it as their principal residence with no rent charged or collected, none of which will be considered to be inconsistent with such certifications.**

This certification is effective on the earlier of the date listed below or the date received by your servicer.

**ACKNOWLEDGEMENT.** The undersigned certifies under penalty of perjury that all of the statements contained in this document are true and correct. By signing below, I also understand and acknowledge that knowingly submitting false information may violate Federal and other applicable law.

| | |
|---|---|
| Kyle J Gorman | 7-23-15 |
| | Date |
| Christine T Gorman | 7-23-15 |
| | Date |

Redacted

In Witness Whereof, the Lender and I have executed this Agreement.
(Signatures must be signed exactly as printed, original signature required, no photocopies accepted)

SIGN HERE Kyle J Gorman

(Must Be Signed Exactly As Printed)

07 / 23 / 2015

MM/DD/YYYY

SIGN HERE Christine T Gorman

(Must Be Signed Exactly As Printed)

07 / 22 / 2015

MM/DD/YYYY

Page 11 of 12

Redacted

**DO NOT WRITE BELOW THIS LINE.**
*************************************************************************************
THIS SECTION IS FOR INTERNAL USE ONLY

Bank of America, N.A., for itself or as successor by merger to BAC Home Loans
Servicing, LP
     By: Urban Settlement Services, LLC, its attorney in fact

By: *Shirley Moore*       Dated: **JUL 2 7 2015**

Name:    **SHIRLEY MOORE**
Title :     **ASSISTANT SECRETARY**

Page 12 of 12

Redacted

## MFR Modification Payment History for Filing



| Preparation Date: | 06/02/20 |
| Prepared by: | Shivabasava |

**Loan Information:**

| | |
|---|---|
| Loan Number | Redacted |
| Debtors Name - 1 | KYLE GORMAN |
| Debtors Name - 2 | CHRISTINE GORMAN |
| Property Address | 2640 CARLSBAD CIR |
| Property State | IL |

**EXHIBIT D**

**Bankruptcy Information:**

| | |
|---|---|
| Bankruptcy Case # | 15-16146 |
| Filing Date: | 5/6/2015 |
| Person filing: | 0 |
| Number of previous filings: | 1 |

**Post petition due**

| | | |
|---|---|---|
| Post petition due date: | 01/01/18 | |
| Post petition $$$ due: | $2,034.69 | **Comment** |
| Post petition insurance: | $0.00 | Post-petition taxes and insurance included in annual |
| Post petition taxes: | $0.00 | escrow analysis and added to monthly payments. |
| Total Post petition due | **$2,034.69** | |

**Post-Petition Modification Payment History Detail**

| Post pmt Rcpt | Post Due Dt Pd | Mo $ Due | $ Received | Comments |
|---|---|---|---|---|
| | 08/01/15 | $103.01 | | Trustee Funds |
| | 09/01/15 | $103.01 | | Trustee Funds |
| | 10/01/15 | $103.01 | | Trustee Funds |
| | 11/01/15 | $103.01 | | Trustee Funds |
| | 12/01/15 | $103.01 | | Trustee Funds |
| | 01/01/16 | $103.01 | | Trustee Funds |
| | 02/01/16 | $103.01 | | Trustee Funds |
| | 03/01/16 | $103.01 | | Trustee Funds |
| | 04/01/16 | $103.01 | | Trustee Funds |
| | 05/01/16 | $103.01 | | Trustee Funds |
| | 06/01/16 | $103.01 | | Trustee Funds |
| | 07/01/16 | $103.01 | | Trustee Funds |
| | 08/01/16 | $103.01 | | Trustee Funds |
| | 09/01/16 | $103.01 | | Trustee Funds |
| | 10/01/16 | $103.01 | | Trustee Funds |
| | 11/01/16 | $103.01 | | Trustee Funds |
| | 12/01/16 | $103.01 | | Trustee Funds |
| | 01/01/17 | $103.01 | | Trustee Funds |
| | 02/01/17 | $103.01 | | Trustee Funds |
| | 03/01/17 | $103.01 | | Trustee Funds |
| | 04/01/17 | $103.01 | | Trustee Funds |
| | 05/01/17 | $103.01 | | Trustee Funds |
| | 06/01/17 | $103.01 | | Trustee Funds |
| | 07/01/17 | $103.01 | | Trustee Funds |
| | 08/01/17 | $103.01 | | Trustee Funds |
| | 09/01/17 | $103.01 | | Trustee Funds |
| | 10/01/17 | $103.01 | | Trustee Funds |
| | 11/01/17 | $103.01 | | Trustee Funds |
| | 12/01/17 | $103.01 | | Trustee Funds |
| Due | 01/01/18 | $103.01 | $0.00 | |
| Due | 02/01/18 | $103.01 | $0.00 | |

| | | | | |
|---|---|---|---|---|
| Due | 03/01/18 | $103.01 | $0.00 | |
| Due | 04/01/18 | $103.01 | $0.00 | |
| Due | 05/01/18 | $103.01 | $0.00 | |
| Due | 06/01/18 | $103.01 | $0.00 | |
| Due | 07/01/18 | $103.01 | $0.00 | |
| Due | 08/01/18 | $103.01 | $0.00 | |
| Due | 09/01/18 | $103.01 | $0.00 | |
| Due | 10/01/18 | $103.01 | $0.00 | |
| Due | 11/01/18 | $103.01 | $0.00 | |
| Due | 12/01/18 | $103.01 | $0.00 | |
| Due | 01/01/19 | $103.01 | $0.00 | |
| Due | 02/01/19 | $103.01 | $0.00 | |
| Due | 03/01/19 | $103.01 | $0.00 | |
| Due | 04/01/19 | $103.01 | $0.00 | |
| Due | 05/01/19 | $103.01 | $0.00 | |
| Due | 06/01/19 | $103.01 | $0.00 | |
| Due | 07/01/19 | $103.01 | $0.00 | |
| Due | 08/01/19 | $103.01 | $0.00 | |
| Due | 09/01/19 | $103.01 | $0.00 | |
| Due | 10/01/19 | $103.01 | $0.00 | |
| Due | 11/01/19 | $103.01 | $0.00 | |
| Due | 12/01/19 | $103.01 | $0.00 | |
| Due | 01/01/20 | $103.01 | $0.00 | |
| Due | 02/01/20 | $103.01 | $0.00 | |
| Due | 03/01/20 | $103.01 | $0.00 | |
| Due | 04/01/20 | $103.01 | $0.00 | |
| Due | 05/01/20 | $103.01 | $0.00 | |
| Due | 06/01/20 | $103.01 | $0.00 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

| | | |
|---|---|---|
| Total Due | $6,077.59 | |
| Total Received | | $0.00 |

*Pre Petition Modification Payment History*

| Trustee Pmt Rcpt | Trustee $ Rcvd | | | Comments |
|---|---|---|---|---|
| 05/22/18 | $246.83 | | $246.83 | |
| 06/20/18 | $149.23 | | $396.06 | |
| 07/24/18 | $149.18 | | $545.24 | |
| 08/20/18 | $149.28 | | $694.52 | |
| 09/24/18 | $149.17 | | $843.69 | |
| 10/19/18 | $149.48 | | $993.17 | |
| 11/19/18 | $149.59 | | $1,142.76 | |
| 12/24/18 | $149.54 | | $1,292.30 | |
| 01/18/19 | $149.63 | | $1,441.93 | |
| 02/21/19 | $149.69 | | $1,591.62 | |
| 03/15/19 | $149.56 | | $1,741.18 | |
| 04/19/19 | $149.62 | | $1,890.80 | |
| 05/16/19 | $149.57 | | $2,040.37 | |
| 06/21/19 | $149.62 | | $2,189.99 | |
| 07/19/19 | $149.68 | | $2,339.67 | |
| 08/21/19 | $151.05 | | $2,490.72 | |
| 09/20/19 | $152.48 | | $2,643.20 | |
| 10/23/19 | $151.25 | | $2,794.45 | |
| 11/26/19 | $159.84 | | $2,954.29 | |
| 12/23/19 | $183.68 | | $3,137.97 | |
| 01/23/20 | $183.63 | | $3,321.60 | |
| 02/26/20 | $183.68 | | $3,505.28 | |

| | | | | |
|---|---|---|---|---|
| 03/25/20 | $183.66 | | $3,688.94 | |
| 04/17/20 | $179.21 | | $3,868.15 | |
| 05/15/20 | $174.75 | | $4,042.90 | |
| | | | $4,042.90 | |
| | | | $4,042.90 | |
| | | | $4,042.90 | |
| | | | $4,042.90 | |
| | | | $4,042.90 | |
| | | | $4,042.90 | |
| | | | | |

| | | | |
|---|---|---|---|
| Pre Funds Used Towards Post Petition Payments | | $4,042.90 | |
| Total Received | | $4,042.90 | |

B6D (Official Form 6D) (12/07)

<table>
<tr><td></td><td></td><td>EXHIBIT<br>E</td><td></td></tr>
</table>

In re    **Kyle J. Gorman,**
        **Christine T. Gorman**                       Case No. _____

                           Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is a creditor, the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor" ,include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion" on the Statistical Summary of Certain Liabilities and Related Data.

☐   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | | |
| Account No. **6980** | | | | 10/05 | | | | | |
| **Bank of America Home Loans** Correspondance/Bankruptcy Dept. ca6-919-01-41 PO Box 5170 Simi Valley, CA 93062 | | | J | **Second Mortgage** **Single Family Home 2640 Carlsbad Circle Aurora, IL 60504** | | | X | | |
| | | | | Value $       164,276.00 | | | | 46,449.00 | 46,449.00 |
| Account No. **8967** | | | | 10/05 | | | | | |
| **CitiMortgage, Inc.** Bankruptcy Department PO Box 140609 Irving, TX 75014-0609 | | | J | **First Mortgage** **Single Family Home 2640 Carlsbad Circle Aurora, IL 60504** | | | X | | |
| | | | | Value $       164,276.00 | | | | 198,000.00 | 0.00 |
| Account No. **8967** | | | | 10/05 | | | | | |
| **CitiMortgage, Inc.** Bankruptcy Department PO Box 140609 Irving, TX 75014-0609 | | | J | **First Mortgage Arrears** **Single Family Home 2640 Carlsbad Circle Aurora, IL 60504** | | | X | | |
| | | | | Value $       164,276.00 | | | | 0.00 | 0.00 |
| Account No. **6379** | | | | 7/12 | | | | | |
| **Honda Finance** Bankruptcy Dept. PO Box 660674 Dallas, TX 75266 | | | J | **Purchase Money Security** **2007 Honda Accord** | | | | | |
| | | | | Value $       8,575.00 | | | | 3,000.00 | 0.00 |
|    **1**    continuation sheets attached | | | | Subtotal (Total of this page) | | | | 247,449.00 | 46,449.00 |

Software Copyright (c) 1996-2014 - Best Case, LLC - www.bestcase.com                           Best Case Bankruptcy

B6D (Official Form 6D) (12/07) - Cont.

In re **Kyle J. Gorman,**
      **Christine T. Gorman**

Case No. _____

_____,
                Debtors

# SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS
### (Continuation Sheet)

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | HWJC | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| Account No. **xx xx 2394** | | | 9/12 | | | | | |
| **Lakewood Valley Homeowners Associat** c/o Caruso Management Group 800 W. 5th Ave, Ste 110B Naperville, IL 60563 | | J | **Non-Purchase Money Security** **Single Family Home 2640 Carlsbad Circle Aurora, IL 60504** | | | | | |
| | | | Value $     **164,276.00** | | | | **0.00** | **0.00** |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |
| Account No. | | | | | | | | |
| | | | | | | | | |
| | | | Value $ | | | | | |

Sheet __1__ of __1__ continuation sheets attached to
Schedule of Creditors Holding Secured Claims

| | Subtotal (Total of this page) | **0.00** | **0.00** |
|---|---|---|---|
| | Total (Report on Summary of Schedules) | **247,449.00** | **46,449.00** |